UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TYDEARAIN SMITH,

Petitioner,

vs.
CASE NO. 8:09-cv-70-T-27MAP
CRIM. CASE NO. 8:07-cr-25-T-27MAP

UNITED STATES OF AMERICA,

Respondent.
_____/

## ORDER

**BEFORE THE COURT** is Petitioner's Amended Motion to Vacate, Set Aside or Correct

Sentence Pursuant to 28 U.S.C. § 2255 (CV Dkt. 5), the Government's Response (CV Dkt. 11) and

Petitioner's Reply (CV Dkt. 12). Upon consideration, the court DENIES Petitioner's motion in part

and orders an evidentiary hearing on three of Petitioner's ineffective assistance claims.

### Procedural Background

Petitioner was charged in a two-count Indictment with possession with intent to distribute

five grams or more of a mixture or substance containing a detectable amount of cocaine base, in

violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B) and 846, and using and carrying a firearm which

Petitioner brandished during and in relation to a drug trafficking crime, in violation of 18

U.S.C. § 924(c)(1)(A)(ii) (CR Dkt. 1). On April 11, 2007, a jury convicted Petitioner of both

charges (CR Dkt. 47). On August 2, 2007, Petitioner was sentenced to 210 months imprisonment

to be followed by eight years of supervised release on count one and to a consecutive term of 84

months imprisonment on count two to be followed by five years of supervised release concurrent with the supervised release imposed on count one. (CR Dkt. 58).

Petitioner appealed the judgment. On May 9, 2008, the United States Court of Appeals for the Eleventh Circuit affirmed Petitioner's convictions but vacated his sentence on count one and remanded the case for consideration of whether Petitioner's sentence should be reduced in light of the "crack cocaine amendment"[1] to the Sentencing Guidelines (CR Dkt. 74). On remand, the court reduced Petitioner's sentence on count one to 168 months imprisonment (CR Dkt. 86).[2] Petitioner did not seek certiorari review in the United States Supreme Court.

The court received Petitioner's original Section 2255 motion on January 16, 2009 (CR Dkt. 91; CV Dkt. 1) and his amended motion on April 29, 2009 (CV Dkt. 5). The Respondent makes no challenge to the timeliness of the motion. Petitioner raises six grounds for relief:

**Ground One:** Ineffective assistance of counsel for failing to request a jury instruction on a lesser-included offense under 18 U.S.C. § 924(c)(1)(A)(i) and actual innocence of the underlying firearm conviction;

**Ground Two:** Ineffective assistance of counsel for failing to properly consult with Petitioner about the consequences of testifying;

**Ground Three:** Trial court erred at sentencing by enhancing Petitioner's offense level by six levels under U.S.S.G. § 3A1.2(c)(1) and ineffective assistance of counsel for failing to argue this error on appeal;

**Ground Four:** Ineffective assistance of counsel for failing to adequately investigate and call a material witness;

**Ground Five:** Ineffective assistance of counsel for failing to advise Petitioner of his statutory right to plead guilty without a plea agreement; and

---

[1] See U.S.S.G. § 1B1.10(c) (amend. 706).

[2] The resentencing had no effect on either Petitioner's sentence on count two or the terms of supervised release.

**Ground Six:** Ineffective assistance of counsel for failing to file an appeal on Petitioner's behalf after resentencing despite Petitioner's instruction to do so

## Facts[3]

A concerned citizen called the Sarasota Police Department and reported drug activity in a Sarasota neighborhood. A Sarasota Police officer responded to the scene and set up a perimeter around the neighborhood, anticipating that persons run due to police presence.

Soon after the officers arrived at the scene, they observed Tydearain Smith (Smith) and another individual running through the anticipated escape route. Smith, who was carrying a large pill bottle, noticed the officers and began discarding crack cocaine as he ran, tossing the bottle to the ground after it was empty.

During the pursuit, Smith removed a loaded 9 millimeter handgun from his waistband, brandishing it as he ran through backyards and jumped fences in an attempt to elude the pursuing officers. [Officer Ken Goebel] ordered Smith to drop the gun, but Smith fell while running from [Officer Goebel], rolled on the ground, and pointed the gun at [Officer Goebel] from that position. [Officer Goebel] fired 3 shots, but he did not hit Smith, who tossed his gun over his shoulder and continued to run.

Eventually officers apprehended Smith, ordering him to stay on the ground and to show his hands. Smith rolled over and tried to run again and in response an officer fired his Taser at Smith, finally subduing him and placing him under arrest.

The officers later returned to the area where [Officer Goebel] initially encountered Smith and retrieved 30.1 grams of crack cocaine, .92 grams of marijuana, and a 9mm Luger pistol along the path that they pursued Smith. The officers found $1,124 on Smith's person.

## I.    MERITS REVIEW OF CLAIMS NOT REQUIRING AN EVIDENTIARY HEARING

## Ground One

Petitioner contends that his trial counsel rendered ineffective assistance by failing to request a jury instruction on a lesser-included offense under 18 U.S.C. § 924(c)(1)(A)(i). He argues that

---

[3] The factual summary derives from the Presentence Investigation Report. Petitioner objected at sentencing to the third paragraph (PSR ¶10), an objection the court overruled.

"there was sufficient doubt presented on behalf of the defense to have persuaded the jury to have found that [he] only possessed the firearm in relation to the drug offense and did not brandish the firearm in relation to the drug offense."[4] Petitioner further claims that he is actually innocent of violating 18 U.S.C.§ 924(c)(1)(A)(ii), the crime for which he stands convicted in count two of the Indictment.

*Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland v. Washington*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims v. Singletary*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable

---

[4] Petitioner fails in his amended motion (CV Dkt. 5) to present facts supporting his claims. To the extent that he relies upon the facts alleged in his original motion (CV Dkt. 1) and to the extent that the Government in its response (CV Dkt. 11, n. 3, p. 3) considered the full arguments presented in both the original and amended motions, the court reviews both motions in considering the merits of Petitioner's claims.

professional judgment." *Strickland v. Washington*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland v. Washington*, 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland v. Washington*, 466 U.S. at 690.

Because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment," Petitioner must demonstrate that counsel's error prejudiced the defense. *Strickland v. Washington*, 466 U.S. at 691-92. To meet this burden, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland v. Washington*, 466 U.S. at 690-91. Petitioner cannot meet her burden merely by showing that the avenue chosen by counsel proved unsuccessful:

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992). *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (*en banc*) (*quoting Burger v. Kemp*, 483 U.S. 776, 794 (1987)). *See also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (counsel has no duty to raise frivolous claims).

Section 924(c)(1) provides in relevant part:

> [A]ny person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime - -
>
> > (i) be sentenced to a term of imprisonment of not less than 5 years;
> > (ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years

18 U.S.C. §§ 924(c)(1)(A)(i), (ii). Contrary to Petitioner's contention, Section 18 U.S.C.§ 924(c)(1)(A)(i) is not a lesser-included offense of 18 U.S.C.§ 924(c)(1)(A)(ii). *See Harris v. United States*, 536 U.S. 545, 556 (2002) ("[A]s a matter of statutory interpretation, § 924(c)(1)(A) defines a single offense."). Accordingly, counsel could not have requested the lesser-included instruction Petitioner suggests.[5] Petitioner fails to demonstrate either deficient performance or

---

[5] Counsel initially argued for a lesser-included offense instruction under 18 U.S.C.§ 922(g) (CR Dkt. 14, p. 16; CR Dkt. 69, pp. 176-180). During a discussion of the final jury instructions (CR Dkt. 70, pp. 94-99), the court and counsel discussed including a definition of "brandish" in the jury instructions and verdict form. In an abundance of caution, the court included the definition in its final instructions to the jury (CR Dkt. 43, p. 14) and included a specific question on the verdict form (CR Dkt. 47, p. 2) asking the jury whether, if it convicted Petitioner of the firearm offense charged in count two of the indictment, Petitioner "brandished" the firearm. The jury convicted Petitioner of count two and answered the question affirmatively. Evidence adduced at trial (CR Dkt. 69, pp. 41, 44-45, 95-96) supports the jury's finding.

resulting prejudice to sustain this claim of ineffective assistance. *See Strickland v. Washington*, 466 U.S. at 691-92.

To the extent that he attempts to present a separate substantive actual innocence claim, Petitioner cannot obtain relief. In order for a claim to be cognizable under 28 U.S.C. 2255, it generally must be based on a constitutional right. *Richards v. United States*, 837 F.2d 965, 966 (11th Cir.1988). A free-standing claim of actual innocence cannot be brought as a substantive claim for relief in a federal habeas action. *See Schlup v. Delo*, 513 U.S. 298, 315 (1995) ("[A] claim of innocence is . . . 'not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'") (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)); *United States v. Montano*, 398 F.3d 1276, 1284 (11th Cir. 2005) ("Actual innocence is not itself a substantive claim, but rather serves only to lift [a] procedural bar caused by a [petitioner]'s failure to timely file his § 2255 motion.).

Even if the claim were cognizable, Petitioner presents no evidence demonstrating his actual innocence. Count two of the indictment charged Petitioner with a violation of 18 U.S.C.§ 924(c)(1)(A)(ii). As the court instructed the jury, the Government was required to prove three elements beyond a reasonable doubt to sustain a conviction on count two:

> The Defendant can be found guilty of that offense as charged in Count Two of the indictment only if all of the following facts are proved beyond a reasonable doubt:
>
> First: That the Defendant committed the drug trafficking offense charged in Count One of the indictment;
>
> Second: That during the commission of that offense the Defendant knowingly carried a firearm, as charged; and
>
> Third: That the Defendant carried the firearm "in relation to" the drug trafficking offense.

The term "firearm" means any weapon which is designed to, or may readily be converted to, expel a projectile by the action of an explosive; and the term includes the frame or receiver of any such weapon or any firearm muffler or firearm silencer.

To "carry" a firearm means that the Defendant either had a firearm on or around his person or transported, conveyed or controlled a firearm in such a way that it was available for immediate use if the Defendant so desired during the commission of the drug trafficking offense; and to carry a firearm "in relation to" an offense means that there must be a connection between the Defendant, the firearm, and the drug trafficking offense so that the presence of the firearm was not accidental or coincidental, but facilitated the crime by serving some important function or purpose of the criminal activity.

To "brandish" a firearm means to display all or part of the firearm, or otherwise make the presence of the firearm known to another person, in order to intimidate that person, regardless of whether the firearm is directly visible to that person.

(CR Dkt. 43, p.14).

Evidence adduced at trial shows that Petitioner had a gun on his person on the day of the charged offenses (CR Dkt. 70, pp. 51-52, 57, 60). Officer Ken Goebel observed Petitioner with an orange pill bottle containing crack cocaine (CR Dkt. 69, p. 35). When Officer Goebel instructed Petitioner to stop, Petitioner dumped the crack cocaine out of the bottle onto the ground and began running. Officer Goebel pursued Petitioner. During the chase Petitioner pulled the gun from his waistband and pointed it at Officer Goebel (CR Dkt. 69, pp. 41, 44-45, 95-96). Petitioner offers neither offers new evidence not presented at trial or on appeal to support his claim of actual innocence nor refutes the evidence that supports his conviction on count two of the Indictment.[6]

**Ground Three**

Petitioner presents two claims for relief: (a) the trial court erred at sentencing by enhancing Petitioner's offense level by six levels under U.S.S.G. § 3A1.2(c)(1) because he is actually innocent

---

[6] The Eleventh Circuit affirmed on appeal Petitioner's conviction on count two (CR Dkt. 74).

of assaulting Officer Goebel; and (b) ineffective assistance of counsel for failing to argue this error on appeal.

(a) Trial court error

Petitioner argues that the trial court erred by enhancing his offense level by six points for assaulting Officer Goebel. The Presentence Investigation Report ("PSR") explains the application of the six-level increase:

> Pursuant to U.S.S.G. § 3A1.2(c)(1), during the flight from the offense, if the defendant, knowing that a person was a law enforcement officer, assaulted such officer in a manner creating a substantial risk of serious bodily injury, increase by 6 levels. During the flight from officers after the offense, the defendant pulled a loaded 9 mm handgun from his waistband and later pointed the weapon at an officer who was chasing him. The defendant failed to obey officers' commands to drop the gun and stop. The law enforcement officers identified themselves and their clothing plainly displayed their agency insignias identifying them as law enforcement officers. Accordingly, a six level increase is appropriate.

(PSR, p. 3, ¶ 23).

Petitioner's claim amounts to a challenge to the sentencing court's application of the Sentencing Guidelines. Collateral relief under Section 2255 "is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *Richards v. United States*, 837 F.2d at 966. An allegation that a given sentence is contrary to the sentencing guidelines is a non-constitutional issue that does not provide a basis for collateral relief in the absence of a complete miscarriage of justice. *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004); *Burke v. United States*, 152 F.3d 1329, 1331-32 (11th Cir. 1998). Petitioner's claim challenging the technical application of an enhancement under the sentencing guidelines is not subject to collateral review under Section 2255 because it is not a constitutional issue. *Lynn v. United States*, 365 F.3d

at 1232. *See also Martin v. United States*, 81 F.3d 1083, 1084 (11th Cir. 1996) ("Because a defendant has the right to directly appeal a sentence pursuant to the Sentencing Guidelines, the defendant is precluded from raising Guidelines issues in collateral proceedings under § 2255.").

Even assuming, *arguendo*, that this claim were cognizable, Petitioner procedurally defaulted the claim by failing to raise it on direct appeal. When a petitioner fails to raise a claim that could and should have been raised at sentencing or on direct appeal, district court review of the claim is barred absent a showing of the procedural default requirements of cause and prejudice or actual innocence. *Bousley v. United States*, 523 U.S. 614 (1998); *United States v. Frady*, 456 U.S. 152 (1982). To show cause for not raising a claim on direct appeal, Petitioner must show that "some objective factor external to the defense impeded counsel's efforts" to raise the claim previously. *Lynn v. United States*, 365 F.3d at 1235 , n. 20 (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)). To show prejudice, Petitioner must demonstrate that "errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." *Wright v. Hopper*, 169 F.3d 695, 706 (11th Cir. 1999) (internal citations omitted). Petitioner fails to allege a valid cause to excuse his default because he points to no external impediment that prevented him from raising this issue on appeal. *Lynn*, 365 F.3d at 1235, n. 20. Petitioner likewise fails to establish a denial of fundamental fairness at trial. *Wright v. Hopper*, 169 F.3d at 706.

Furthermore, Petitioner presents no evidence beyond his own conclusory allegation establishing that he is actually innocent of the crimes for which he was convicted. To establish actual innocence, Petitioner must demonstrate that in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him. "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. at 623-24 (1998) (citing

*Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)). *Schlup* observes "that a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. . . . To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence - - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial." *Schlup v. Delo*, 513 U.S. at 324. If a petitioner demonstrates "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence," then the petitioner has made a "gateway" claim of innocence allowing review of the merits of his otherwise barred constitutional claims. *Melson v. Allen*, 548 F.3d 993, 1002 (11th Cir. 2008).

Petitioner presents no new reliable evidence demonstrating his factual innocence. *Schlup v. Delo*, 513 U.S. at 324. Because Petitioner cannot establish an actual innocence claim, he cannot avail himself of this "gateway" to obtain federal review of his procedurally defaulted claim, *Schlup v. Delo*, 513 U.S. at 315, and consequently this claim is procedurally barred from federal review.[7]

Notwithstanding the procedural bar, even if considered on the merits, the claim warrants no relief. The evidence presented at trial establishes that Petitioner pointed a loaded gun at Officer Goebel (CR Dkt. 69, pp. 44-45, 95-96, 116; CR Dkt. 70, p. 43- 44). Petitioner presents no evidence to the contrary.

---

[7] To the extent that Petitioner may argue a separate substantive claim of actual innocence, the claim is not cognizable in this Section 2255 motion. *Schlup v. Delo*, 513 U.S. at 315; *Herrera v. Collins*, 506 U.S. at 404; *United States v. Montano*, 398 F.3d at 1284.

(b)    Ineffective assistance of appellate counsel

Petitioner contends that his trial counsel rendered ineffective assistance by failing to challenge on appeal[8] the trial court's application of the six-level enhancement.

The *Strickland* standard of review applies to ineffective assistance of appellate counsel claims. *Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991), *cert. denied*, 502 U.S. 1077 (1992). To establish such a claim, Petitioner must show that appellate counsel performed deficiently and that the deficient performance resulted in prejudice. To demonstrate deficient performance, Petitioner must show that appellate counsel's failure to discover a non-frivolous issue and file a merits brief raising that issue fell outside the range of professionally acceptable performance. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). To demonstrate prejudice, Petitioner must show a reasonable probability exists that, but for appellate counsel's unreasonable failure to file a merits brief on this issue, he would have prevailed on appeal. *Smith v. Robbins*, 528 U.S. at 285-86.

As discussed is ground 3(a), *supra*, the court appropriately applied the six-level enhancement in calculating Petitioner's sentencing guidelines range.[9]  Petitioner has established neither that

---

[8]  Trial counsel represented Petitioner both at trial and on direct appeal.

[9]  Counsel objected to the application of the enhancement in the PSR and argued during the sentencing hearing that the court should not apply the enhancement (CR Dkt. 71, pp. 22-23).  The court rejected this argument:

| Court: | I believe this was Officer Goebel - - |
|---|---|
| [Prosecutor]: | Yes, sir. |
| Court: | - - who described in the foot chase seeing the defendant pull the weapon from his waistband.  And in describing why he shot at the defendant, alluded to the muzzle or the barrel of the gun being aimed in his direction as the defendant, I think, had just cleared a fence and then fell to the ground and rolled, something along those lines. |

Clearly, Officer Goebel is a law enforcement officer.  The

(continued...)

12

appellate counsel unreasonably elected not to raise this issue on appeal nor that if appellate counsel

had raised the issue that Petitioner would have prevailed on appeal. *Smith v. Robbins*, 528 U.S. at

285-86. *See also Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) ("Experienced advocates since time

beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and

focusing on one central issue if possible, or at most on a few key issues."). Because Petitioner fails

to establish deficient performance or resulting prejudice from appellate counsel's actions, he cannot

prevail on this claim of ineffective assistance.

**Ground Four**

Petitioner contends that his trial counsel rendered ineffective assistance by failing to

adequately "investigate the personnel background of Officer Goebel and the other assisting officers

to impeach the[ir] credibility." Specifically, Petitioner argues that "counsel's investigation in this

regard should have and would have . . . revealed the legal premise that counsel could have brought

---

[9](...continued)

> defendant himself testified that he heard the phrase, ["] fire in the hole["], meaning law enforcement was in the area when he began to run. There's testimony that the officers identified themselves as law enforcement officers and instructed the defendant to stop.
>
> The gun that was recovered was a nine millimeter. It was loaded, was it not . . .?

[Prosecutor]:    It was loaded and had a bullet in the chamber, Your Honor.

Court:    Yes, sir.

[Prosecutor]:    With the safety off.

Court:    This is a situation constituting an assault on this law enforcement officer, creating a substantial risk of serious bodily injury.

> I will overrule the objection of the defendant and find that the enhancement under 3A1.2(c)(1) is appropriate.

(CR Dkt. 71, pp. 23-25).

into evidence the bad acts of Officer Goebel, including those included in Officer Goebel's personnel file and records with the Sarasota Police Department's internal affairs files" (CV Dkt. 1, p. 15). Petitioner further contends that his trial counsel rendered ineffective assistance by failing to secure the appearance of his former employer, William Scurry, as a witness for trial.

(a)     Failure to investigate Officer Goebel's background

The record belies Petitioner's claim that counsel failed to investigate Officer Goebel's background. Before trial began, counsel advised the Government of information from Officer Goebel's personnel file that counsel intended to use at trial. In response, the Government filed a motion in limine and moved to exclude the information under Federal Rule of Evidence 608. Before opening statements, the court heard argument and ultimately granted the Government's motion:

> [Prosecutor]: Yes, sir. I was provided by the defense with an indication that it would be used in the cross examination of Officer Goebel, some information from his personnel file from the City of Sarasota.
>
> Essentially, on August 9th of 2002, Officer Goebel received a letter of reprimand concerning statements that he made in front of a class composed of officers from several agencies. Basically, the department found that those letters were - - those comments were inappropriate and, consequently, this letter of reprimand is now in Officer Goebel's file.
>
> I would submit to the court that the comments that he made were investigated and found not to have any basis, number one; and number two, they don't go to any issue concerning truthfulness or character for truthfulness or untruthfulness and, therefore, pursuant to Rule 608, I would move that these be excluded from any comment or questioning of the officer in this case.
>
> Court:     [Counsel]?

[Counsel]:     Judge, in preparation for trial, we came across this information and I have a copy here if you want to see it. But in any event, what happened was these were comments made by Officer Goebel at a training class and some of the officers that were in attendance found it offensive, and they made a complaint.

I think it was an anonymous complaint and so it was investigated. And as I understand it, it's in the documents. Higher-up officials to Officer Goebel investigated it, talked to him about it.

He indicated that the statements that he made - - he admitted to making the statements and said they were made in jest and so they were false. And he - - and false means they're not true. And as a result of that, he was given a reprimand for that.

These statements were made during the course of his employment, during the course of his duties. And for him to make comments such as his interactions with individuals - - there were two comments. Number one, one is a [sic] having a dog bite a suspect who's in custody.

Then the other one was driving up behind individuals and putting on his lights, and if they took off speeding, which is the issue we believe is relevant in this case, they take off speeding, then he pursues them. And if they don't he just leaves them alone.

He says those comments were made in jest. They were not true. In this case, we feel that would be relevant and not extrinsic evidence under the rule because the facts of this case indicate Officer Goebel is the only one, according to the police reports that we have in our custody and we've investigated, he's the only one that says Mr. Smith was in possession of this crack cocaine pill bottle and that's going to be heavily attacked in this case. And I do have - -

Court:     Let me make sure I understand. The statements were made during a training session in August of 2002?

| | |
|---|---|
| [Counsel]: | Yes, sir. |
| Court: | What was his capacity when those statements were made; was he participating or was he a training officer or what? |
| [Counsel]: | That's not clear in the documents, Judge, other than he was at the training sessions. It appears that he was speaking before a crowd because it was overheard by several other police officers of the same police department. And they complained about it to the higher-ups. |
| | So it was heard in the earshot of several other officers who felt that the statements were offensive and this was totally inappropriate. And that's what triggered the internal investigation by the Sarasota Police Department of Officer Goebel. |
| | It is not extrinsic evidence, what we're offering here. It is on a material issue in this case of the identification of Mr. Tydearain Smith. |
| Court: | What does the dog bite statement have to do with this case? |
| [Counsel]: | The dog bite would not, Judge. All we would be asking to introduce his comment on, the fact that he sometimes in the course of the performance of his duties, he makes false statements that are not true. |
| | That's material from the standpoint of he's the only one that says Mr. Smith was in possession of this pill bottle that contained crack cocaine, a bottle that has no fingerprints on it. |
| Court: | Wait a minute. You're saying that it's not the tactic he proposes of coming up behind somebody to see if they speed off, it's the fact that he claims that what he said was false? |
| [Counsel]: | Yes, sir. He has a tendency - - well, two things. Number one, he has a tendency to not tell the truth or |

16

fabricate incidents that occurred between him and individuals that he arrests, i.e., defendants.

Now, on the issue of coming up behind individuals and them taking off, if you'll allow me to get a proffer of what the evidence may be in this case, Judge, Officer Goebel and Officer Heaven are in Sarasota. They meet at the location of 15th and Central. They decide to go down to 18th.

Officer Goebel goes down 17th, Officer Heaven goes down 18th, and Officer Heaven is trying to pull up and see who is going to take off running and then they'll run back toward 17th and, hah, that's where Officer Goebel is. That's very similar to him pulling up behind someone and seeing if they're going to take off running.

And that's the same or similar issue in this case; go down 18th Street and see who will take off running in this case. But more importantly, we want to expose the fact that Officer Goebel has a tendency to fabricate issues.

Court:          I don't understand the fabrication argument. I understand the tactic or technique that he may have been professing that might be analogous to what you think the evidence will show. But I don't see - - I don't understand the fabrication argument.

[Counsel]:      Well, if he - - in this case, Judge, he's the only one in this case from our side that can identify - -

Court:          I understand that. I'm talking about the statement during the training session.

[Counsel]:      Well, he made a statement that's not true during the course of his employment. And if it's not - -

Court:          Well, what statement that wasn't true?

[Counsel]:      He says that he - - he says that he had his dog bite someone. That's not true. He made a statement that

17

he pulls up behind individuals, turns on his lights to see if they'll start fleeing. He says that's not true.

So those are two false statements by this officer during the course of his employment, so that's relevant from our perspective of whether of not he's telling the truth on this issue, since he has a tendency to fabricate or make up issues regarding incidents that occurred between him and individuals that he has arrested.

Court:     All right. I'm going to grant the government's motion in limine regarding this false statement theory. I don't think it's admissible.  I think it's extrinsic act evidence or evidence of a false statement that's extrinsic to the case.

With respect to the tactic, if you will, that's a much closer call. I will defer and wait until I've heard his direct testimony and apparently some cross-examination. And if you wish to get into that, just approach the bench and let's air it out at that time.

(CR Dkt. 69, pp. 3-9). During cross-examination of Officer Goebel at trial, counsel revisited this issue and sought to question Officer Goebel about the letter of reprimand:

[Counsel]:   Judge, may we approach?

Court:     Yes, sir.

(At sidebar, on the record).

[Counsel]:   Judge, the only other area I'd like to delve into would be the extrinsic evidence exception under 608(b). I've given the court *Calle*, *United States versus Calle*. I'm sorry. The only - - and the testimony has been Officer Goebel is the only one that supposedly saw 608(b) [sic] with the pill bottle. He's the only one. He's the only one that will testify to that.

The evidence that I would like to get into is regarding the reprimand regarding the officer's testimony about

18

he makes statements during the course of his employment. He was called on the carpet. It was investigated and he says that those statements were false and he got a reprimand for that.

It's a material issue in this case regarding who saw Mr. Smith with the pill bottle in this case. This officer, if he makes up things, and we believe that that's a proper area for us to cross him on, I think that's what the jury should be entitled to hear, whether or not he has the voracity [sic] for telling the truth or making things up to the extent that he has falsified or made up things that occurred between him and individuals that he arrests or defendants.

The *Calle* court indicates that it was error to not allow that evidence in for the material - - when it involves a material issue. And we feel, Judge, that this is a material issue regarding this officer as the only one saying that he saw Mr. Smith with the orange pill bottle in his hand.

Court:       Response?

[Prosecutor]: Judge, Rule 608 doesn't contemplate this as evidence that would attack a defendant's voracity [sic].

Court:       You mean the witness's.

[Prosecutor]: This witness's voracity [sic]. What we have here is an officer who was reprimanded for making jokes or saying things in jest during the course of a training session.

Just because he told a joke doesn't make him a liar. It wasn't material to the instruction. It was a joke to other law enforcement officers, which this officer got reprimanded for making. And it doesn't make him a liar. And to suggest that Rule 608 allows this type of evidence in is not consistent with the rule, nor is it consistent with the opinion that [the] defense has cited to the court.

| Court: | Same ruling applies. I've read *Calle*, C-A-L-L-E, 822 F.2d 1016. I disagree with [counsel]. I think *Calle* does support the court's determination. |
|---|---|
| | Reading from that opinion and referencing 608(b), the court recites extrinsic evidence of a witness's prior misconduct should be excluded where that evidence is probative only of the witness's general propensity for truthfulness. Such evidence should be admitted, however, where it is introduced to disprove a specific fact material to defendant's case. |
| | Rule 608(b) should not stand as a bar to the admission of evidence introduced to contradict in which the jury might find disproves a witness's testimony as to a material issue of the case. |
| | Seems to me that the only reason for attempting to introduce whatever occurred in the training was to attack the witness's credibility and that's not allowed under 608(b). |
| | Now, the other aspect of the ruling was with respect to his comment about the tactic of coming up behind somebody. You've covered that in cross. I just want to make sure you understand the court's ruling. I've effectively granted the motion in limine of the government, but recognized that that might be something material to the tactic. But I don't know if that's an issue for you or not. Do you want to get into that or not? |
| [Counsel]: | If I can just have a minute? |
| Court: | Sure. |
| (Brief pause). | |
| [Counsel]: | Okay. I'm about done. |
| Court: | All right. |

| [Counsel]: | I may get into it, I may not. But maybe like two or three minutes and I'll sit down. |
| Court: | All right. Very good. |

(End of sidebar discussion).

(CR Dkt. 69, pp. 96-99). Counsel ultimately forewent questioning Officer Goebel about the letter of reprimand.[10]

The record clearly refutes Petitioner's contention that counsel failed to investigate Officer Goebel's background. Petitioner establishes neither that counsel performed deficiently nor that any further investigation into Officer Goebel's background would have resulted in a different outcome at trial. Petitioner further fails to present any factual or legal support for his allegations and thus presents no evidence of entitlement to relief. *See Hill v. Lockhart*, 474 U.S. 52 (1985) (conclusory allegations of ineffective assistance of counsel are insufficient to raise a constitutional issue); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim). Petitioner's failure to meet either *Strickland*'s deficient performance requirement or prejudice requirement to support this claim of ineffective assistance precludes relief. *See Strickland v. Washington*, 466 U.S. at 691-92.

(b)    Failure to call witness William Scurry

Petitioner contends that trial counsel rendered ineffective assistance by failing to secure William Scurry as a witness for trial. During trial Petitioner testified that he worked for Scurry as a landscaper and that Scurry paid him in cash on a weekly basis (CR Dkt. 70, p. 48). Petitioner

---

[10] Petitioner challenged on direct appeal the trial court's exclusion of Officer's Goebel's statements and the trial court's limitation on questioning about those statements on cross-examination (CV Dkt. 11, Ex. 1). The Eleventh Circuit concluded that the trial court did not abuse its discretion by either excluding the statements or limiting Petitioner's cross-examination of Officer Goebel (CV Dkt. 74).

testified that he had gotten paid by Scurry on the day he was arrested and that he had approximately twelve hundred dollars on his person (CR Dkt. 70, pp. 52, 76). The Government argued in closing argument that this evidence "suggest[ed] what the source of that cash is and that was the defendant's trade, selling crack cocaine" (CR Dkt. 70, p. 114). Petitioner claims that if counsel had "interviewed, deposed and secured the attendance of Mr. Scurry, surely the concerns of the sentencing court would have evaporated and the enhancement for perjury[11] would not have been applied" (CV Dkt. 1, p. 14; CV Dkt. 12, p. 5).

Contrary to Petitioner's allegations, the record shows that counsel subpoenaed Scurry as a trial witness but Scurry did not appear in court (CR Dkt. 69, 156-57). During the discussion of the perjury enhancement at the sentencing hearing counsel advised the court that Scurry refused to come to court:

> [Prosecutor]:  Your Honor, the defendant was found with a large amount of United States currency at the time of his arrest. The jury could have drawn an inference from that amount of money that it was drug money and

---

[11] The Government argued at the sentencing hearing that a two-level sentencing enhancement for perjury was justified, in part, based upon Petitioner's trial testimony about how he came to have such a large amount of cash on his person at the time of his arrest. The court concluded that Petitioner testified falsely at trial and that the perjury enhancement was warranted, stating in part:

The defendant's testimony concerning where he came up with the substantial amount of cash is a material matter. My impression as I observed this defendant testify was the he was testifying falsely.

There is an inference the jury could draw that he did, in fact, possess substantial cash because he was, in fact, engaged in selling crack cocaine. And I find that the defendant's credibility was not good.

I am mindful of [counsel]'s explanation concerning the subpoena issued and that's through no fault of counsel if a witness doesn't show up. It very well could have been just as likely that he didn't show up because he didn't want to come in and try to support a falsehood. So I do find that that is a specific aspect of the defendant's testimony which was false and material.

(CR Dkt. 71, p. 18).

related to his sale of narcotics in that area, which was the purpose the agents or the detective - - I'm sorry - - the officers visited the area that day based on the calls that drugs were being sold in the area.

And consequently, by the defendant telling the jury that he had legitimately earned a large sum of money was material to that potential evidence or the issues surrounding that evidence as the jury might have considered them in their deliberations.

Court:        [Counsel]?

[Counsel]:    Two responses, Judge. Mr. Smith was charged with the possession of the crack cocaine with intent to distribute. By the very nature of the quantity is what the case law and this court is [sic] familiar with. That's the evidence before the jury and they can make a finding of whether or not Mr. Smith possessed the crack cocaine with intent to distribute, irrelevant of how much money he had on him; whether it was one dollar or $5000.

The second point I want to make, and I'm sure you may hear about this in the future, quote, unquote, but Mr. Scurry - - I tried to contact him on a Saturday before jury selection. And it's reflected in the transcript that we served him with a subpoena on a Tuesday. Unfortunately, that subpoena was marked for 3 o'clock.

Mr. Scurry refused to come to court. I spoke [to] him, you may recall we broke early for trial on that Tuesday, back at my office. Mr. Scurry contacted me very adamant about not coming to court. After going back and forth - - and I want to make sure this is on the record - - Assistant Federal Public Defender David Secular, who is employed at the office, was also in my office at the time Mr. Scurry contacted me.

Mr. Scurry was very adamant about not coming to court and testifying, said he had not been doing things right in terms of his business and filing papers, and he

was very adamant about not coming. I told Mr. Scurry, you're under subpoena, you need to be at the courthouse at 9 o'clock in the morning.

You will recall that when we put on our case in chief, I asked the court if I could search the hallway. Mr. Scurry did not show up at all and he did not appear at 3 o'clock that afternoon.

So I want to say that because I want the court to be aware Mr. Scurry was under subpoena to come to court to testify that Mr. Smith was, in fact, employed with him, but he did not show up as I asked him to do so.

(CR Dkt. 71, pp.11-13).

The record clearly shows that counsel attempted to have Scurry testify on Petitioner's behalf at trial. Petitioner's unsupported allegations, coupled with his failure to establish deficient performance or prejudice resulting from counsel's actions, preclude relief on this claim ineffective assistance. *See Strickland v. Washington*, 466 U.S. at 691-92.

## II.    CLAIMS REQUIRING AN EVIDENTIARY HEARING

### Ground Two

Petitioner contends that his trial counsel rendered ineffective assistance by failing to properly consult with Petitioner about the consequences of testifying. He argues that he was unaware that he could receive an enhanced sentence for perjury if he misrepresented material facts to the court. Petitioner claims that if he had known of this possible consequence, he would not have testified.

Petitioner testified at trial and denied both possessing any crack cocaine and pointing the gun at Officer Goebel (CR Dkt. 70, pp. 46-83). Petitioner also testified that the substantial amount of money found on his person at the time of his arrest came from his employer for previous weeks'

work in a landscaping business. Before sentencing the Government filed an objection to the Presentence Investigation Report contending that Petitioner should receive a two-level upward adjustment under U.S.S.G. § 3C1.1 because he testified falsely at trial. At the sentencing hearing the court heard lengthy arguments from both the Government and counsel regarding the application of the enhancement (CR Dkt. 71, pp. 3-17). The court ultimately determined that petitioner testified untruthfully, sustained the Government's objection, and applied the two-level enhancement to the calculation of Petitioner's sentencing guidelines range (CR Dkt. 71, pp. 17-20).

In his unsworn affidavit Petitioner claims that if he "had known that [he] could have been enhanced for taking the stand and testifying to facts different from the Government witnesses, [he] would have never taken the stand but would have waived [his] right to testify. Counsel never explained . . . the pros and cons of taking the stand on [his] own behalf, nor did counsel warn [him] that [he] could be enhanced for credibility determinations made by the court regarding [his] trial testimony" (CV Dkt. 3, p. 1).

In its response the Government argues only that "[t]here is no evidence to support [Petitioner]'s allegation" and that "[Petitioner] fails to support his claim that his counsel neglected to review the possible consequences involved in testifying on his own behalf" (CV Dkt. 11, pp. 12-13). This argument is insufficient to refute Petitioner's allegations. Section 2255 requires a district court to grant an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Because Petitioner alleges facts that, if true, may entitle him to relief under *Strickland*, an evidentiary hearing is necessary to resolve this claim. *See* Rule 8, Rules Governing Section 2255 Proceedings.

**Ground Five**

Petitioner contends that his counsel rendered ineffective assistance by failing to advise Petitioner that he could enter a guilty plea absent a plea offer from the Government. He argues that if he "had known that he could have pleaded guilty to the court, even without a plea offer . . . he would have pleaded guilty and would not have insisted on proceeding to trial," resulting in a possible reduction in his adjusted offense level for acceptance of responsibility and a lesser sentence. Petitioner further claims in his unsworn affidavit that he "only proceeded to trial because [he] thought [he] had no other choice since the government did not offer a plea deal" (CV Dkt. 3, p. 2).

In response the Government argues that Petitioner offers "no support for this contention other than his own affidavit. . . . Essentially [Petitioner] claims regret for missing a perceived opportunity for a lower sentence by not entering into an open plea. [Petitioner's] complaint in this ground does not dispute his guilt, only his perception that he would have been given a lower sentence if he had plead to the indictment" (CV Dkt. 11, p. 8). The record neither conclusively refutes or supports Petitioner's contention and the Government presents no evidence refuting Petitioner's allegation. Consequently, an evidentiary hearing is necessary to resolve this claim. *See* Rule 8, Rules Governing Section 2255 Proceedings.

**Ground Six**

Petitioner contends that counsel failed to file a notice of appeal on Petitioner's behalf after resentencing despite Petitioner's request to do so. He states in his unsworn affidavit that he instructed counsel to file a notice of appeal challenging the application of the 100:1 ratio in his case but counsel never filed the notice. The Government states in response that although "[t]he current record does not support the denial of Smith's claim, "[t]he remand . . . called for specific relief and

action in regard to the guidelines amendments concerning crack cocaine and this court resentenced [Petitioner] accordingly. An appeal, therefore would have been wholly frivolous . . . ." (CV Dkt. 11, pp. 17-18).

The *Strickland* "test applies to claims, like [Petitioner's], that counsel was constitutionally ineffective for failing to file a notice of appeal." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). "In the context of such a claim, a petitioner can establish that his attorney acted in a professionally unreasonable manner either by showing that counsel 'fail[ed] to follow the defendant's express instructions with respect to an appeal' or by showing that, in the absence of specific instructions form the petitioner, there was reason to believe that 'a rational defendant would want to appeal.'" *Cunningham v. United States*, 2010 WL 1852650 at *2 (11th Cir. 2010) (unpublished) (quoting *Roe v. Flores-Ortega*, 528 U.S. at 477). To satisfy *Strickland's* prejudice prong, "a defendant who shows that his attorney has ignored his wishes and failed to appeal his case need only demonstrate that, but for the attorney's deficient performance, he would have appealed." *Gomez-Diaz v. United States*, 433 F.3d 788, 792 (11th Cir. 2005).

In support of his claim, Petitioner presents only his unsworn affidavit in which he claims he instructed counsel to file a notice of appeal following resentencing. The Government neither filed an affidavit from Petitioner's trial counsel nor offers any other evidence refuting Petitioner's allegation. The Government's argument that Petitioner's appeal would have been frivolous does not resolve this claim. "A defendant need not establish that his direct appeal would have been arguably meritorious; he need only show that his counsel's constitutionally deficient performance deprived him of an appeal he would have otherwise taken - - i.e., the defendant expressed to his attorney a desire to appeal." *McElroy v. United States*, 259 Fed. Appx. 262 (11th Cir. 2007). Because the

record before the court does not conclusively refute Petitioner's allegation, an evidentiary hearing is necessary to resolve this claim. *See* Rule 8, Rules Governing Section 2255 Proceedings.

Accordingly, it is **ORDERED AND ADJUDGED** that:

1) Grounds 1, 3, and 4 of Petitioner's Amended Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 (CV Dkt. 5) are **DENIED** and **DISMISSED**;

2) This case is scheduled for an evidentiary hearing on Ground 2, Ground 5, and Ground 6 on **July 30, 2010, at 9:30 A.M.**

3) The Government is directed to immediately issue a writ to secure Petitioner's presence at said hearing. The writ shall be provided to the U.S. Marshal's Office with a copy to chambers.

4) The Government is directed to subpoena Petitioner's defense counsel in the underlying criminal action, A. Fitzgerald Hall, Esq., to appear at said hearing.

5) This matter is referred to Magistrate Judge Mark A. Pizzo for immediate appointment of counsel for Petitioner.

**DONE AND ORDERED** in chambers this 29th day of June, 2010.

JAMES D. WHITTEMORE
United States District Judge

Copies to:
Petitioner, *pro se*
Counsel of record