UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TYDEARAIN SMITH,

        Petitioner,

vs.                                                 CASE NO. 8:09-cv-70-T-27MAP
                                                  CRIM. CASE NO. 8:07-cr-25-T-27MAP

UNITED STATES OF AMERICA,

        Respondent.
_____/

## ORDER

Before the Court is Petitioner's § 2255 motion to vacate. (CV Dkt. 5). An evidentiary hearing was conducted on July 30, 2010, on Grounds Two, Five and Six[1] of Petitioner's Amended Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 (CV Dkt. 5) which allege ineffective assistance of counsel. Counsel was appointed to represent Petitioner. At the conclusion of the evidentiary hearing, the Court announced findings of fact and conclusions of law which are incorporated by reference herein. Based on the testimony and evidence presented, Grounds Two, Five and Six lack merit and warrant no relief.[2]

### Ineffective Assistance of Counsel Claims

To prevail on his claims of ineffective assistance of counsel, Petitioner must prove deficient performance on the part of counsel and resulting prejudice. *Strickland v. Washington*, 466 U.S. 668 (1984). He must demonstrate that counsel made errors so serious that counsel was not functioning

---

[1] Grounds One, Three, and Four were denied by previous order entered on June 29, 2010 (CV Dkt. 13).

[2] The Court paraphrases the testimony based on its notes and recollection, as a transcript of the hearing has not been prepared.

as the "counsel" guaranteed the defendant by the Sixth Amendment. *Id.* Second, he must show that the deficient performance was so serious that he was deprived of a fair trial and reliable result. *Id. Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998). Both deficient performance and resulting prejudice must be proven. *Strickland v. Washington*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims v. Singletary*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland v. Washington*, 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland v. Washington*, 466 U.S. at 690.

Because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment," Petitioner must demonstrate that counsel's error prejudiced the defense. *Strickland v. Washington*, 466 U.S. at 691-92. To meet this burden, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. at 694.

## Discussion

### Grounds Two and Five

Petitioner was convicted after a jury trial of possession with intent to distribute cocaine base

and using and brandishing a firearm during and in relation to a drug trafficking crime. (CR Dkt. 47).[3] In its verdict, the jury expressly found that Petitioner brandished the firearm. (CR Dkt. 47). The firearm was a loaded 9mm handgun, which Petitioner pointed at Officer Kenneth Goebel, a Sarasota police office who was chasing Petitioner after he ran from an area where drug transactions had been reported, and saw him carrying a large pill container which appeared to be 3/4 full of what appeared to be (and turned out to be), crack cocaine. Petitioner was originally sentenced to 210 months on Count One and a consecutive term of 84 months on Count Two, followed by supervised release. (CR Dkt. 58). After a remand for reconsideration of the sentence on Count One based on the retroactive amendment to the crack cocaine guidelines, and pursuant to a Stipulation regarding the impact of that amendment, Petitioner's sentence on Count One was reduced to 168 months. (CR Dkts. 83, 86).

---

[3] The following facts, accurately summarized in the Pre-Sentence Investigation Report at ¶ 10, underlie Petitioner's convictions:

> A concerned citizen called the Sarasota Police Department and reported drug activity in a Sarasota neighborhood. A Sarasota Police officer responded to the scene and set up a perimeter around the neighborhood, anticipating that persons run due to police presence.
>
> Soon after the officers arrived at the scene, they observed Tydearain Smith (Smith) and another individual running through the anticipated escape route. Smith, who was carrying a large pill bottle, noticed the officers and began discarding crack cocaine as he ran, tossing the bottle to the ground after it was empty.
>
> During the pursuit, Smith removed a loaded 9 millimeter handgun from his waistband, brandishing it as he ran through backyards and jumped fences in an attempt to elude the pursuing officers. [Officer Ken Goebel] ordered Smith to drop the gun, but Smith fell while running from [Officer Goebel], rolled on the ground, and pointed the gun at [Officer Goebel] from that position. [Officer Goebel] fired 3 shots, but he did not hit Smith, who tossed his gun over his shoulder and continued to run.
>
> Eventually officers apprehended Smith, ordering him to stay on the ground and to show his hands. Smith rolled over and tried to run again and in response an officer fired his Taser at Smith, finally subduing him and placing him under arrest.
>
> The officers later returned to the area where [Officer Goebel] initially encountered Smith and retrieved 30.1 grams of crack cocaine, .92 grams of marijuana, and a 9mm Luger pistol along the path that they pursued Smith. The officers found $1,124 on Smith's person.

During his trial, Petitioner testified and essentially denied all of the material facts alleged in the indictment as well as the facts testified to by Officer Goebel. His sentence was enhanced for obstruction of justice pursuant to USSG § 3C1.1 for testifying falsely during trial.[4]

In **Ground Two**, Petitioner contends that his trial counsel rendered ineffective assistance by failing to consult with him regarding the consequences of testifying at trial. More specifically, Petitioner contends, and testified during the evidentiary hearing, that his attorney failed to explain the risks of testifying, that he could be impeached by inconsistent statements, that he could be prosecuted for perjury if he lied on the stand and that his sentence could be enhanced if he lied. He testified that he was unaware that he could receive an enhanced sentence for perjury if he testified falsely. Petitioner contends that if he had known of this possible consequence, he would not have testified.[5]

In **Ground Five,** Petitioner contends that his attorney was ineffective in failing to counsel him that he could plead guilty without a plea agreement. Petitioner contends that if he "had known that he could have pleaded guilty to the court, even without a plea offer . . . he would have pleaded guilty and would not have insisted on proceeding to trial . . . ." He claims that his attorney never told

---

[4] Petitioner denied both possessing any crack cocaine and pointing the gun at Officer Goebel (CR Dkt. 70, pp. 46-83). Petitioner also testified that the substantial amount of money found on his person at the time of his arrest came from his employer for previous weeks' work in a landscaping business. Before sentencing the Government filed an objection to the Presentence Investigation Report contending that Petitioner should receive a two-level upward adjustment under U.S.S.G. § 3C1.1 because he testified falsely at trial. At the sentencing hearing the Court heard lengthy arguments from both the Government and counsel regarding the application of the enhancement (CR Dkt. 71, pp. 3-17). The Court ultimately determined that Petitioner testified falsely, sustained the Government's objection, and applied the two-level enhancement to the calculation of Petitioner's sentencing guidelines range (CR Dkt. 71, pp. 17-20).

[5] Petitioner claims that if he "had known that [he] could have been enhanced for taking the stand and testifying to facts different from the Government witnesses, [he] would have never taken the stand but would have waived [his] right to testify [and that] Counsel never explained . . . the pros and cons of taking the stand on [his] own behalf, nor did counsel warn [him] that [he] could be enhanced for credibility determinations made by the court regarding [his] trial testimony" (CV Dkt. 3, p. 1).

him the Government offered a plea agreement. (CV Dkt. 1, p. 16; CV Dkt. 5, p. 10). Petitioner further claims that he "only proceeded to trial because [he] thought [he] had no other choice since the government did not offer a plea deal." (CV Dkt. 3, p. 2).

Petitioner's testimony during the evidentiary hearing was not worthy of belie and is rejected. Petitioner blatantly (and admittedly) lied on the stand during his trial. Likewise, he selectively lied during the evidentiary hearing. Specifically, the Court finds that Petitioner testified falsely concerning his consultations with his attorney and the events leading to his decision to testify during trial. Further, his testimony that he was not aware that he could be charged with perjury and his sentence enhanced if he lied on the stand, and that he did not understand that he could have pleaded guilty without a plea agreement, is simply not believable. Petitioner is not a novice in the criminal justice system, having pleaded guilty to a felony drug charges in South Carolina before he was arrested for the instant offense.[6] Because of that experience, he was aware of his options, including his right to plead guilty without a plea agreement, regardless of whether he discussed that with his attorney.

It is apparent, and the Court finds, that Petitioner was, contrary t his testimony, aware that if he lied on the stand, there were potential consequences. He testified that he knew it was important to tell the truth, he knew the difference between lying and telling the truth, and he understood the oath he took when he took the stand at trial. He admits that he lied during his trial testimony. According to Petitioner, he considered his trial an "all or nothing" process, that he did what he had to do to win, that is, he lied "to win."

It is disingenuous for Petitioner to maintain that he did not understand that there were

---

[6] *See* Presentence Investigation Report ¶35.

consequences for lying on the stand. An attorney cannot be ineffective in failing to explain the obvious, that false testimony while under oath subjects a defendant to a potential prosecution for perjury and a more severe sentence if convicted. Here, however, Petitioner's attorney did explain those consequences and warned Petitioner of the very consequence he ultimately received for lying, an enhanced sentence for obstruction of justice.

Petitioner was represented at trial by Alec Hall, an experienced Assistant Federal Public Defender. Hall spent considerable time consulting with Petitioner before trial, meeting with him seven to ten times. Hall discussed and explained the charges, the potential penalties, the Government's case, the guidelines and sentencing table, as well as Petitioner's options. Hall's contemporaneous notes of his March 2, 2007 jail consultation with Petitioner confirm that he discussed the guidelines, the applicable penalties, including the minimum mandatory penalty for Count Two, his plea options, their trial strategy, and the plea agreement offered by the Government. Specifically, they discussed that Petitioner could plead guilty, and that he faced a total of seventeen years (ten on Count One and seven on Count Two). They discussed pleading open versus pursuant to the plea agreement. They discussed the possibility of a USSG § 5K1.1 substantial assistance motion which was available under the plea agreement, which in Hall's opinion was the only benefit Petitioner could gain under the plea agreement, as opposed to pleading "open."[7]

According to Hall, Petitioner was "very adamant" that he was not guilty and wanted to go to trial. After the March 16, 2007 status conference, the prosecutor offered to drop the brandishing

---

[7] According to Petitioner, Hall told him there was no plea agreement from the Government. Of course, this conflicts with Hall's testimony. Hall testified that he received a written plea agreement from the Government on February 28, 2007, which was date stamped and in his file. According to his contemporaneous notes of his March 2, 2007 meeting with Petitioner, Hall apprised Petitioner of the plea agreement but Petitioner remained adamant that he wanted to go to trial, and was not interested in cooperating. This is yet another example of Petitioner testifying falsely.

charge, and reduce the minimum mandatory sentence on Count Two to five years, or a total maximum sentence of fifteen years. Petitioner rejected this offer, telling Hall that he was not interested in fifteen years, did not want to plead guilty, and wanted to go to trial.

Petitioner acknowledges that Hall discussed the sentencing guidelines and the penalties for each count, and that Count Two carried a minimum mandatory penalty of five years, which could be seven years if he was found to have "brandished" the firearm. He also acknowledged that he told Hall that he was not interested in cooperating. Contrary to Hall's testimony, however, Petitioner testified during the evidentiary hearing that Hall never explained that he could plead guilty "straight up" without a plea agreement. This testimony is rejected as unworthy of belief.

After the first day of trial, Hall visited Petitioner, who told Hall he wanted to testify because things had not gone well in his opinion. Hall explained that he saw the trial judge taking extensive notes, and explained the potential for a higher sentence under the obstruction enhancement if the Court found that Petitioner lied, and the possibility of a perjury or false statement charge as well.

Petitioner recalled the consultation with Hall after the first day of trial, although his recollection of the discussion differs markedly from Hall's. Petitioner acknowledges that Hall prepped him for his testimony, explained that he could be impeached by his prior record, and gave him "insight" to the questions he would be asked on cross examination. Hall told him the prosecutor was very aggressive and that he should answer questions with a yes or no. Contrary to Hall's testimony, however, Petitioner testified that Hall never explained that he could be impeached by inconsistent statements, that he could be prosecuted for perjury or that his sentence could be enhanced if he lied.

Attorney Hall was a credible witness. He documented his numerous meetings with Petitioner

and fulfilled his Sixth Amendment responsibility to discuss with Petitioner his options of pleading guilty or proceeding to trial. Based on his testimony, the Court finds that, contrary to Petitioner's testimony, Hall did explain and discuss Petitioner's plea options with Petitioner, including his right to plead open without a plea agreement, as well as the plea agreement and the Government's oral offer to reduce the exposure on Count Two. Hall explained the risks of testifying falsely to Petitioner, including the potential for an obstruction enhancement and the possibility of a perjury or false statement prosecution if he lied on the stand. Hall expressly advised Petitioner that the judge was taking notes during the trial, and that there was a potential for an enhanced sentence if Petitioner testified falsely.[8]

In sum, Alec Hall rendered effective assistance of counsel to Petitioner. Petitioner has not shown deficient performance on Hall's part or prejudice resulting from any alleged deficient performance. Grounds Two and Five accordingly lack merit and are DENIED.

**Ground Six**

After remand for reconsideration of the sentence on Count One, Petitioner and his court appointed attorney entered into a written Stipulation that Petitioner was eligible for a 42 month reduction in his sentence based on the retroactive application of the revised cocaine base sentencing guidelines (CR Dkt. 83). *See* U.S.S.G. § 1B1.10(c)(amend. 706). Petitioner's sentence on Count One was reduced from 210 to 168 months in accordance with the stipulation.

Petitioner testified that after his sentencing, he requested his attorney to file an appeal but that his counsel failed to do so. *See Gomez-Diaz v. United States*, 433 F.3d 788 (11th Cir. 2005). He states in his unsworn affidavit attached to his Section 2255 motion that he instructed counsel to file

---

[8] Hall noted that the Court referred to its notes during sentencing in finding that Petitioner had testified falsely.

a notice of appeal challenging the application of the 100:1 ratio in his case. He testified that he wanted to appeal that, as well as other issues, such as the "brandishing."[9]

Petitioner was represented at the second sentencing hearing by attorney Mark Rodriguez, another experienced criminal defense attorney who frequently accepts appointments under the Criminal Justice Act. Petitioner testified that Rodriguez met with him before the resentencing hearing and explained what would happen at the hearing. Petitioner acknowledged that, based on his conversation with Rodriguez, he knew that he only had ten days to file an appeal. He admits, however, that he did not contact Rodriguez within that time about filing an appeal. He claims he had a relative contact Rodriquez about an appeal.

Rodriguez testified that he met with Petitioner before the sentencing hearing and discussed and reviewed the Stipulation for a 42 month reduction on Count One. Given the procedural posture of the case, Rodriguez testified that he would have discussed Petitioner's appellate rights with him at that time, but could not recall whether he did or did not. Petitioner's recollection of Rodriguez telling him he had ten days to appeal demonstrates that Rodriguez did, as he surmised, discuss Petitioner's right to appeal with Petitioner prior to sentencing.

Rodriguez confirmed that he did not meet with Petitioner after sentencing. Rodriguez was adamant, however, that at no time after sentencing did Petitioner advise Rodriguez that he wanted to file an appeal. According to Rodriguez, if Petitioner had wanted to appeal, he would have immediately filed a notice of appeal, since he was CJA appointed and he would have had no reason

---

[9] Petitioner also stated that he wanted to appeal both his new sentence and his conviction for brandishing a firearm. Petitioner had previously appealed the firearm conviction on direct appeal. The Court advised Petitioner at the resentencing hearing that he could appeal the drug conviction in Count One only. Consequently, he could not have challenged the firearm conviction under Count Two after re-sentencing.
  Petitioner's contention that he wanted to appeal the 100:1 crack to powder ratio, considering his untrustworthy testimony, is nothing short of a convenient and opportunistic, after the fact, reason he apparently believes will buttress his contention that he asked Rodriquez to appeal. It does not. This is an example of Petitioner's selective lying, consistent with his explanation for lying during trial, to do "what [he] had to do to win."

9

not to. Because Petitioner received the benefit of the reduced sentenced pursuant to the stipulation, Rodriguez could identify no appealable issues after sentencing.

The Court concludes that Ground Six lacks merit. Prior to the sentencing hearing, Rodriguez conferred with Petitioner and reviewed the proposed Stipulation with the Government incorporating a 42-month sentence reduction on Count One of the indictment. The Court accepted the stipulation and reduced Petitioner's sentence by 42 months. Petitioner was advised of his right to appeal. Petitioner's testimony that he told Rodriguez at the end of the sentencing hearing that he wanted to appeal is not believable. Petitioner acknowledged that he knew he had ten days to file an appeal, based on his pre-hearing conversation with Rodriguez. He did not, however, contrary to his testimony, ask Rodriguez to appeal.

Rodriguez acknowledged that because the hearing went as planned and the Court accepted the stipulation, he would not have again discussed Petitioner's appellate rights with him after the hearing. Notwithstanding, Rodriguez would have had no reason not to file a notice of appeal if Petitioner had asked him to. Further, the Court finds that Rodriguez received no communication from Petitioner or anyone on his behalf during the ten-day period after the hearing indicating that Petitioner wanted to file an appeal.

The *Strickland* "test applies to claims, like [Petitioner's], that counsel was constitutionally ineffective for failing to file a notice of appeal." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). When a client fails to make a specific request that an attorney file an appeal, the inquiry is whether the attorney consulted sufficiently with the client about a potential appeal and made a reasonable effort to determine the client's wishes. *Gomez-Diaz v. United States*, 433 F.3d 788, 791-92 (11th Cir. 2005). If the attorney consulted with the client, the attorney's performance is professionally

unreasonable only if he fails to follow the client's instructions. *Roe v. Flores-Ortega*, 528 U.S. at 478.[10]

Here, it is clear that Petitioner did not instruct Rodriguez to file an appeal. Accordingly, the *per se* duty outlined in *Flores-Ortega* was not triggered. Based on the testimony at the evidentiary hearing, the Court concludes that Rodriguez fulfilled his constitutional duty to consult with Petitioner about his appellate rights before the sentencing hearing and that Petitioner did not, on the day of sentencing, or within the ten-day period following sentencing, inform Rodriguez that he wanted to appeal.

To the extent that Rodriguez did not consult a second time with Petitioner about his appellate rights, the Court finds that Rodriguez had no affirmative duty to consult with Petitioner a second time. Rodriguez' pre-sentencing consultation with Petitioner satisfied the requisite "reasonable effort to determine the client's wishes." *Roe v. Flores-Ortega*, 528 U.S. 470, 478 (2000). In light of the stipulation and sentence, Rodriguez correctly concluded that there were no non-frivolous grounds for appeal. That Rodriguez did not consult with Petitioner following imposition of sentence does not mitigate against a finding of reasonable and non-deficient performance, notwithstanding the Court's comment.

Given Rodriguez' consultation with Petitioner prior to sentencing, it was not unreasonable or deficient for him to not again review those appellate rights with Petitioner. *See Roe v. Flores-Ortega*, 528 U.S. at 479-80 (rejecting a brightline rule that counsel must always consult with the

---

[10] If the attorney did not consult with the client about an appeal, a court must determine whether an affirmative duty to consult existed. *Roe v. Flores-Ortega*, 528 U.S. at 478. An affirmative duty exists only when either (1) a rational defendant would have wanted to appeal, or (2) the defendant reasonably demonstrated an interest in filing an appeal. *Roe v. Flores-Ortega*, 528 U.S. at 480. If an affirmative duty existed, the attorney's obligation was to consult with the defendant and explain the advantages and disadvantages of filing an appeal and make a reasonable effort to ascertain the defendant's wishes. *Roe v. Flores-Ortega*, 528 U.S. at 478.

defendant regarding an appeal). Rodriguez consulted with Petitioner, they agreed to and signed a stipulation for a 42 month sentence reduction as to Count One, and Petitioner's sentence was reduced accordingly. The Court informed Petitioner of his right to appeal but Petitioner expressed no interest in appealing to Rodriguez. "Under these circumstances, it would be difficult to say that counsel is 'professionally unreasonable,' as a constitutional matter, in not consulting with such a defendant regarding an appeal." *Roe v. Flores-Ortega,* 528 U.S. at 479 (quoting *Strickland*, 466 U.S. at 691.)

The Court concludes that Rodriguez's representation did not fall below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. at 690. Even assuming, *arguendo*, that Rodriguez's failure to meet with Petitioner after sentencing was deficient, Petitioner fails to establish that a rational defendant in his position would have wanted to appeal. *See Gomez-Diaz v. United States*, 433 F.3d at 792 (To satisfy *Strickland's* prejudice prong, "a defendant who shows that his attorney has ignored his wishes and failed to appeal his case need only demonstrate that, but for the attorney's deficient performance, he would have appealed.") Accordingly, Ground Six has no merit and is **DENIED.**

### CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his motion. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (*quoting*

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (*quoting Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). Petitioner has not made the requisite showing in these circumstances. Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

Accordingly, it is **ORDERED AND ADJUDGED** that Grounds Two, Five, and Six of Petitioner's Amended Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (CV Dkt. 5) are **DENIED**. The clerk is directed to enter judgment against Petitioner and to **close** this case.

**DONE AND ORDERED** this 24th day of August, 2010.

**JAMES D. WHITTEMORE**
**United States District Judge**

Copies:
Counsel of Record
Petitioner